Estate of C. August Seifert, Deceased, Maude B. Seifert, Executrix v. Commissioner. Estate of C. A. Seifert, Deceased, Maude B. Seifert, Executrix v. Commissioner. Estate of C. A. Seifert, Deceased, Maude B. Seifert, Executrix and Maude B. Seifert, Surviving Spouse v. Commissioner.
Estate of C. August Seifert v. Commissioner
Docket Nos. 105653, 105766, 105767.
United States Tax Court
1945 Tax Ct. Memo LEXIS 288; 4 T.C.M. (CCH) 227; T.C.M. (RIA) 45073; February 21, 1945
*288 Raymond E. Hackett, Esq., Atlantic St., Stamford, Conn., for the petitioners. James T. Haslam, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion KERN, Judge: The Commissioner determined deficiencies in docket No. 105653, in estate tax in the amount of $101,012.46, and a delinquency penalty in the amount of $25,253.12, against the estate of C. A. Seifert. The petitioners contend that most of the property included by respondent in the assets of the estate, were disposed of by the decedent prior to his death by gifts to his wife, son-in-law and daughter. In docket No. 105766, the Commissioner determined deficiencies in income tax of C. A. Seifert for the following years, for which he filed a separate return, in the amounts and years indicated below: 1925
$ 2,497.99
1926
388.86
1927
2,239.08
1928
5,404.24
1929
11,377.72
1932
3,307.64
1935 (to Sept. 6)
638.88
In docket No. 105767 the Commissioner determined deficiencies in income-tax, and penalties, against the Estate of C. A. Seifert for the years and amounts set out below, for which C. A. Seifert and Maude Seifert, his wife, filed joint returns: Year
Deficiency
Penalty
1924
$ 587.71
$ 293.85
1930
16,549.08
8,328.54
1931
397.33
198.67
1933
130.47
65.24
1934
1,927.72
963.86
*289 The Commissioner determined that all returns filed by C. A. Seifert, both separate and joint, were false and fraudulent with intent to evade tax. Penalties were not assessed for the years in which C. A. Seifert filed separate returns, since the determination was not made until after the death of C. A. Seifert. By amendments to answers, the Commissioner claims additional deficiencies for the years 1926 and 1928. The income tax deficiencies, generally, are based on the theory that numerous items of income were omitted, that only losses on stock transactions were reported, the gains being omitted, and that items of income which should have been reported by C. A. Seifert were reported by members of his family. [The Facts] The facts set forth below are taken, in part, from the stipulation filed at the hearing, and, in part, from oral and documentary evidence offered there. The stipulation of facts is incorporated herein by reference. The Estate Tax Case C. August Seifert died a resident of Danbury, Conn., on September 6, 1935. His widow, Maude B. Seifert, is the duly appointed sole executrix under his last will and testament. She did not file an estate tax return for the estate. *290 The Commissioner of Internal Revenue prepared an estate tax return, and determined a deficiency in the estate tax of $101,012.46, and a delinquency penalty of $25,253.12, notice of which was mailed to the executrix on September 4, 1940. The deficiency was computed upon a gross estate of $589,619.40, consisting of the following items: SCHEDULE B - STOCKS AND BONDS
Shares
Name
Value Per Sh.
Total Value
36
Chase National Bank
33
$ 1,188.00
85
Chem. Nat'l Bank & Trust Co.
7 1/2
4,037.50
100
Childs, Inc.
5
500.00
180
Cities Service, Com.
2
360.00
205-2/80
Commonwealth & So.
1 7/8
384.43
15
E. I. duPont
120 1/4
1,803.75
100
Electric Pr. & Lt. Com.
5 7/8
587.50
90
Empire Gas & Fuel, 8% Pfd.
30
2,700.00
50
Federal M. & S.
75
3,750.00
10
Detroit Aircraft
50
Irving Trust
15 3/4
787.50
163
Kennecott Copper
22 3/4
3,871.25
Dividends declared
24.45
15
Gilbert and Bennett
11
165.00
35
Manhattan Co.
25 1/4
883.75
40
Margay Oil
7 1/4
290.00
1600
Middle States Petroleum
1 5/8
2,600.00
1300
Noma Electric
1 3/4
2,275.00
101
Park & Tilford
15 1/4
1,540.25
423
Pitney Bowes
6 1/4
2,643.75
416
Plymouth Oil
9 1/8
3,796.00
100
Socony Vacuum
11 1/8
1,112.50
Dividends declared
15.00
1200
Standard Oil - Indiana
25 7/8
31,050.00
Dividends declared
300.00
4
Mission Corporation, Com.
12 1/8
48.50
100
Standard Oil - N.J.
45
4,500.00
10526
Texon Oil & Land
5 5/8
59,208.75
12
Group No. One
2600
31,200.00
1500
Group No. Two
3/4
1,125.00
150
Underwood-Elliott Fisher
66 1/4
9,937.50
700
United Gas Corp. Com.
4 3/4
3,325.00
100
United Corp. Com.
5
500.00
133 1/3
Gen. Theatres Eq. Com. (5 1/3 warrants)
9
48.00
66
Gen. Theatres, Eq. Pfd. (6 6/10 warrants)
9
59.40
13
N.Y.N.H. & H.R.R. Pfd.
14 3/4
191.75
25
Remington Auto. Quotation Bd.
2000
Bully Boy Mine Corp.
10
Amer. Insulator Corp. Del. Com.
20
Amer. Insulator Corp. Del. Pfd.
100.00
61/100
Corp. Liquidating Co.
1
Danbury Industrial Corp.
1.75
4022
C. A. Seifert Realty Co.
206,400.72
376
S. & G. Realty Co.
55,251.00
328
Ford Coal Co.
28,766.87
Total
$467,329.87
*291 SCHEDULE C.
Mortgages, Note and Cash: Balance on deposit with City Nat'l Bk. of Danbury, Conn., in name of C. A.
Seifert, Atty.
$ 909.64
Note and mortgage of The Danbury-Bethel Fur Co.
19,883.33
$ 20,792.97
SCHEDULE F.
Other Miscellaneous Property: One half interest in partnership of Seifert & Goos, Danbury, Conn.
98,201.11
Loan due to decedent from Ford Coal Co.
807.95
Int. in mineral and oil leases - Texas
2,487.50
$101,496.56
Grand Total - Gross Estate
$589,619.40
Of these items, the petitioner concedes the following to be includible in the gross estate of the decedent solely for purposes of computing the Federal estate tax. Shares
Name
Value Per Sh.
Total Value
10
Chemical Nat'l Bk. & Trust Co. 47 1/2
$ 475.00
100
Childs, Inc.
5
500.00
72
Cities Service Com.
2
144.00
205-2/80
Commonwealth & Southern
1 7/8
384.43
15
E. I. duPont
120 1/4
1,803.75
90
Empire Gas & Fuel 8% Pfd. 30
2,700.00
50
Federal Mining & Smelting 7% Pfd. 75
3,750.00
10
Detroit Aircraft
63
Kennecott Copper 23 3/4
1,496.25
Dividends declared
9.45
15
Gilbert and Bennett 11
165.00
35
Manhattan Co. 25 1/4
883.75
40
Margay Oil
7 1/4
290.00
101
Park & Tilford 15 1/4
1,540.25
416
Plymouth Oil
9 1/8
3,796.00
900
Standard Oil Indiana 25 7/8
23,287.50
Dividends declared
225.00
4
Mission Corporation, Com. 12 1/8
48.50
1500
Group No. Two
3/4
1,125.00
550
United Gas Corp. Com.
4 3/4
2,612.50
100
United Corporation, Com.
5
500.00
133 1/3
General Theatres Eq. Com. (5 1/3 warrants)
9
48.00
66
General Theatres Eq. Pfd. (6-6/10 warrants)
9
59.40
13
N. Y. N. H. & H. R. R. Pfd. 14 3/4
191.75
25
Remington Automatic Quotation Bd.
2000
Bulley Boy Mine Corp.
10
American Insulator Corp. Del. Com.
20
American Insulator Corp. Del. Pfd.
100.00
61/100
Corporation Liquidating Co.
50
Conn. Agstone Co. II Pfd.
1
Danbury Industrial Corp.
1.75
3
C. A. Seifert Realty Co.
153.96
1
S. & G. Realty Co.
146.95
19
Ford Coal Co.
1,666.34
C-1
Balance on deposit with City Nat'l Bank of Danbury,
Conn., in name of C. A. Seifert, Atty.
909.64
F-2
Loan due to decedent from Ford Coal Co.
807.95
F-3
Interest in mineral and oil leases - Texas
2,487.50
$52,307.62
*292 Petitioner, Maude B. Seifert, contends that she, individually, is the sole, legal and beneficial owner of all the remaining assets included in the gross estate by respondent, except the following, which are claimed to be the property of Beatrice S. Ford, her daughter: 1000 shares Noma Electric
5626 shares Texon Oil & Land Co. 3 shares Group No. One Oil Co.
150 shares United Gas Corporation 75 shares Ford Coal Co. and the following which, it is contended, are the property of Harry M. Ford, her son-in-law: 500 shares Texon Oil & Land Co. 3 shares Group No. One Oil Co.
200 shares Ford Coal Co. 54 shares Cities Service, Com. Those assets which Maude B. Seifert claims to own are valued at $467,425.07. None of the values referred to are in dispute. Petitioner Maude B. Seifert and decedent were married in 1895, and lived in Danbury, Conn., throughout their married lives. They had one daughter, Beatrice, who married Harry M. Ford on August 31, 1925. The daughter and son-in-law lived with decedent and his wife in their home. The decedent was engaged in the coal and lumber business and also operated in real estate in Danbury. He maintained at least one separate individual *293 checking account, and one checking account designated only as "C. A. Seifert, attorney." The balance in the latter account is conceded to be properly includible in the estate for tax purposes. He also maintained, at various times during his life, stock brokerage accounts with several firms, through which he bought and sold stocks extensively. Accounts with the same firms were maintained in the names of his wife and daughter, and numerous instances of sales and purchases between the members of the family are found in the record. Seifert and Goos - one-half interest $98,201.11 One of the assets in dispute here is a one-half interest in a partnership known as Seifert and Goos, engaged in the coal and lumber business. Before January 1, 1925, the partners were C. A. Seifert and Emil Goos. As of that date, a new partnership agreement was executed, setting forth the partnership interests as follows: C. A. Seifert, 50 percent; Emil J. Goos, 25 percent; and Edward L. Goos, 25 percent. The two last named partners were sons of the original partner, Emil Goos. Later, in 1925, Emil J. Goos died, and his interested was acquired by his brother, Edward. No new partnership agreement was executed *294 as a result of that shift of interest, but from that time on Edward Goos and C. A. Seifert conducted the partnership business. On January 5, 1925, C. A. Seifert executed and recorded with the town clerk a document purporting to assign to Beatrice M. Seifert an undivided one-half of his interest in the partnership. On February 15, 1932, C. A. Seifert executed and recorded another document purporting to assign to Beatrice M. Seifert an undivided one-fourth interest in the partnership. By virtue of these documents, Maude B. Seifert claims to be the owner of one-half of the partnership. Beatrice M. Seifert, now Beatrice S. Ford, makes no claim to this asset. In the partnership income tax return for 1925, the partners listed are: C. A. Seifert
25%
Emil Goos
25%
Edward Goos
25%
Beatrice M. Seifert
25%
In the partnership return for 1926, signed by C. A. Seifert, the typed return lists Beatrice M. Seifert as the owner of 25 percent of the partnership income, but the name "Beatrice" was stricken out by hand and the letter "B" inserted after "M," so that it then read "M. B. Seifert" as the owner of that 25 percent. There is no evidence as to when or by whom the *295 alteration was made. Thereafter, until 1933, M. B. Seifert was listed in the income tax returns as the owner of a 25 percent interest, although the 1932 assignment was again to "Beatrice M. Seifert." In the partnership return for 1932 filed by C. A. Seifert after he had executed the document purporting to transfer all his remaining interest in the partnership, the partners are listed as follows: C. A. Seifert
1/2
Edward L. Goos
1/2
Maude B. Seifert included in the report of her income for the taxable years 1925 to 1929, inclusive, that part of the partnership income withdrawn which was proportionate to the interest in the partnership which she claimed pursuant to such transfer. In 1925 and subsequent years the Commissioner consistently refused to recognize the alleged transfer for income tax purposes and included the entire one-half of the partnership income in the taxable income of C. A. Seifert. After the purported transfers had been executed, C. A. Seifert continued as before the management of the partnership business. Edward L. Goos dealt only with C. A. Seifert as a partner. C. A. Seifert filed a statement of assets with the City National Bank on April 26, 1929, in *296 which he asserted he was the owner of one-half interest in the partnership. In 1926, C. A. Seifert withdrew from the partnership a total of $14,000 by five checks, all of which were deposited in his individual checking account in the City National Bank. In 1927, C. A. Seifert withdrew a total amount of $11,500 in ten checks, eight of which, totaling $9,500, were deposited in his individual checking account in the City National Bank. The two checks which were not traced, aggregated $2,000. In 1928, C. A. Seifert withdrew $19,520 in nine checks, all of which were deposited in the individual checking account of C. A. Seifert in the City National Bank. During 1930 seven checks totaling $9,500 were withdrawn by C. A. Seifert. Four of these were deposited in C. A. Seifert's individual checking account. Three others were not traced. In 1931 total withdrawals by C. A. Seifert from the partnership were $11,000 by means of eight checks. Six of these totaling $7,500 were deposited in the individual checking account of C. A. Seifert at the City National Bank. Two, aggregating $3,500, were not traced. In 1932, total withdrawals of C. A. Seifert were $10,000 by seven checks, all of which *297 were deposited to the credit of C. A. Seifert at the City National Bank. In 1933, there was only one withdrawal of $1,000, and its disposition was not traced. In 1934 and 1935, there was no withdrawal. There is no evidence that Maude B. Seifert ever actually received any income from the partnership. The transfers of the partnership assets were not bona fide and were invalid for tax purposes. S. & G. Realty Co. 376 shares, $55,251.00 Three Hundred seventy-six shares of S. & G. Realty Co. stock are among the disputed assets. This company was incorporated in February, 1925, to take over some real estate which had been bought jointly by C. A. Seifert and his then partner in the coal and lumber business, Emil Goos, for the benefit of their families. On May 25, 1925, the corporation issued 756 shares of $100 par value stock of which Seifert and Goos each received 376 shares. The remaining four shares were issued to members of their families, Maude B. Seifert receiving one share and Beatrice M. Seifert one share. On the following day a certificate for 376 shares was issued to Maude Seifert. Eleven months later, C. A. Seifert surrendered his certificate for 376 shares, which was *298 endorsed in blank as of April 30, 1926, and canceled. On June 30, 1925, Maude Seifert endorsed her certificate for 376 shares in blank and placed it in the safe deposit box to which her husband and her daughter had access. Maude Seifert did not contribute any money or property to the corporation, nor did she render any considerable service to it. C. A. Seifert managed the property held by the corporation. In 1927 four checks were issued to C. A. Seifert by S. & G. Realty Co., totaling $18,000, which were charged on the books of the corporation against "withdrawals". All of these checks were deposited in the personal bank account of C. A. Seifert at the City National Bank. In statements of his assets filed by C. A. Seifert with banks on four different occasions dated April 26, 1929, December 21, 1931, July 22, 1933 and March 24, 1934, C. A. Seifert listed, among the assets owned by him, either "376 shares of S. & G. Realty Co.," or "one-half interest in S. & G. Realty Company." This stock was the property of C. A. Seifert at the time of his death. The C. A. Seifert Realty Co. - 4,022 shares - $206,400.72 Four thousand twenty-two shares of this stock, of a value of $206,400.72 *299 which are claimed by Maude B. Seifert to be her own property, are included by respondent in the gross estate of C. A. Seifert. This corporation was organized in May 1928 with an authorized capital stock of 5,000 shares, of $100 par value. Four thousand twenty-five shares were originally issued as follows: No. 1 C. August Seifert
4,022 shares
No. 2 Maude B. Seifert
1 shares
No. 3 Beatrice S. Ford
1 shares
No. 4 Harry M. Ford
1 shares
The corporation was organized for the purpose of taking over real estate holdings of the decedent and Maude B. Seifert. During his lifetime, C. A. Seifert was president, treasurer and director of the company, and other members of his family held the other offices. C. A. Seifert managed the properties held by the corporation. Real estate of the declared value of $392,500 was transferred to the corporation by C. A. Seifert at the time of its organization, and one piece of property valued at $10,000 was turned over by Maude B. Seifert. On June 3, 1928, two days after the issuance of the stock, the decedent canceled his certificate No. 6 for 4,020 shares and issued Certificate No. 6 for 4,020 shares in the name of Maude B. Seifert, *300 who endorsed the certificate in blank and placed it in the family safe deposit box. In the credit statement to which we have heretofore referred, which C. A. Seifert filed on April 26, 1929, he listed among his assets "all interest of C. A. Seifert Realty Co., $440,000." In a similar statement filed by him on December 31, 1931, he said "I own all but 3 shares of the C. A. Seifert Realty Co. cap. at $500,000, $420,000 paid in value, appr. $400,000." On July 22, 1933, he claimed "412 shares C. A. Seifert Realty Co., $200,000", and on March 24, 1934, he claimed an interest of $300,000 in this company. During 1929 checks totaling $3,310.50 were issued by C. A. Seifert Realty Co., charged to "Salaries", payable to Mrs. C. A. Seifert, all of which were endorsed and cashed or deposited by C. A. Seifert. One check charged to "salaries" was made payable to Samuel Pisetsky for $1,250. In 1931 the "salaries" account of this company was charged with $1,000 as salary to Maude B. Seifert, of which $500 was applied to the payment of a note owed by C. A. Seifert to the Danbury National Bank. In 1930 checks were issued to Maude B. Seifert as salary in the amount of $1,300 of which $900 was *301 cashed by C. A. Seifert on the date of their issuance. This stock was the property of C. A. Seifert at the time of his death. Ford Coal Co. - 328 shares - $28,766.87 This corporation was organized in November 1926 with an authorized capital of 500 shares of $100 par value stock. The initial issue of stock totaled 150 shares, issued as follows: No. 1 C. August Seifert
55 shares
No. 2 Maude B. Seifert
55 shares
No. 3 Beatrice S. Ford
20 shares
No. 4 Harry M. Ford
20 shares
In exchange for his stock, Harry M. Ford transferred to the corporation various items of personal property which he had used to carry on the business prior to the organization of the corporation, of a declared value of $5,000. C. A. Seifert paid in $10,000 in cash. Neither Beatrice S. Ford nor Maude B. Seifert contributed any property or cash; although Beatrice Ford had contributed some clerical services. Certificate No. 2 for 55 shares issued in the name of Maude B. Seifert, was immediately placed in the family safe deposit box. It is unendorsed. The business was managed almost exclusively by Harry M. Ford, who devoted his full time to the business. Beatrice S. Ford continued to *302 do clerical work for the company. The Seiferts had practically nothing to do with this business. At the time of the organization of the company, salaries were voted to Harry M. Ford of $100 a week, later increased to $300, and Beatrice S. Ford of $3,000 per year. The company's financial condition did not permit the payment of these salaries, and $35 a week was paid to Harry Ford, while Beatrice Ford was paid nothing. The unpaid salaries were duly credited to their accounts on the books. On March 30, 1932, there was due Harry M. Ford for arrears in salary approximately $42,500, and to Beatrice Ford about $5,500, and to C. A. Seifert for moneys loaned to the corporation, $19,900. On that date, the authorized capital of the company was increased to 1,000 shares. Six hundred seventy-nine shares were thereupon voted to be issued: C. A. Seifert
199 shares
Harry M. Ford
425 shares
Beatrice S. Ford
55 shares all in payment of the obligations referred to. Pursuant to some kind of error not wholly explained the stock voted to C. A. Seifert was issued to Harry M. Ford. A subsequent adjustment, also somewhat obscure in its terms, left in the name of Harry M. Ford 200 shares, *303 and in the name of C. A. Seifert 480 shares. In April, 1933, for unexplained reasons, C. A. Seifert sold to the company 425 shares of his stock for $1, and surrendered a certificate for 444 shares. No certificate was ever issued representing the difference of 19 shares. These shares were owned by Mrs. Seifert at the time of his death. On November 7, 1934, C. A. Seifert endorsed his original certificate of 55 shares and delivered it to Maude B. Seifert, who had it canceled and a new certificate issued in her name. This transfer was intended to be, as it was, an absolute gift. The certificates issued to Beatrice S. Ford and one to Maude B. Seifert have, since their issuance, been kept in the family safe deposit box, but are not endorsed. No dividends have ever been paid on this stock. At various times, funds of this company were used to buy Cities Service stock in the names of members of the Seifert family, and in one instance, of a housemaid employed by them, which funds were later repaid by C. A. Seifert, who also later sold the stock, and deposited the proceeds in his own account. In his financial statements filed with the bank C. A. Seifert, in 1929, claimed a "2/3 interest *304 in Ford Coal Co., $25,000"; in 1931, "I own 100 shares Ford Coal Co. value approximately $40,000"; and in 1933, an "interest in the Ford Coal Company, $70,000." C. A. Seifert owned only 19 shares of this stock at the time of his death. Danbury & Bethel Co. Mortgage In 1926, C. A. Seifert sold real estate to Samuel Pisetsky and received $10,000 in cash, and arranged a mortgage for $28,000 to be made payable to Maude B. Seifert, intended as a gift for her. From April 28, 1927, to October 13, 1930, C. A. Seifert received eight checks payable to him for interest on the mortgage indebtedness of which seven were deposited by C. A. Seifert in his bank account or cashed. The eighth was not traced. From 1931 on, interest and principal checks were received by Maude B. Seifert. On at least one occasion, she used the proceeds to pay a note which she had incurred to pay an obligation of C. A. Seifert, and one check in reduction of principal was deposited to "C. A. Seifert, Attorney" account on the City National Bank. This mortgage was not the property of C. A. Seifert at the time of his death. Texon Oil and Land Co. stock The decedent first became interested in the purchase of this *305 stock in 1919 and from that time up to 1930 he purchased and sold a substantial number of its shares each year. In 1928 he assigned 15,000 shares of the 65,300 shares which he then owned to Maude B. Seifert. This assignment was intended by Seifert to be an absolute gift. Shortly thereafter the shares of outstanding stock were reduced in the ratio of 5 for 1, and the 15,000 old shares given to Maude B. Seifert were exchanged for 3,000 new. Thereafter Maude B. Seifert bought and sold other shares of this stock, and at the date of C. A. Seifert's death 4,400 shares were standing in her name. After the gift of 15,000 shares in 1928, Mr. Seifert owned 50,300 shares. As a result of the reduction in outstanding shares he received 10,060 shares. These were issued as follows: C. A. Seifert 6,800, M. B. Seifert 3,000, B. M. Ford 60, and Ford Coal Co. 200. M. B. Seifert endorsed the certificates for the stock given to her in 1928 in blank and placed it in the family safe deposit box. At the time of Seifert's death, 5,626 shares of this stock stood in the name of Beatrice S. Ford. In 1925, 5,000 shares were transferred to her by C. A. Seifert as a wedding gift. She had previously acquired *306 300 shares and received a stock dividend of 530 later, and by the end of 1925 5,830 shares were standing in her name. During 1928 an additional 2,000 shares were acquired by her, and in the reduction of its outstanding shares in 1929 the company issued in her name 1,566 shares. During 1929 60 shares out of the 10,060 shares to which C. A. Seifert was entitled by reason of the reduction in outstanding stock referred to above were issued in her name and 1,600 were sold, so that at the end of 1929 only 26 shares were outstanding in her name. On September 9, 1930, C. A. Seifert transferred an additional 5,000 shares to her name. In 1933 an additional 500 shares were transferred to her name by C. A. Seifert, and an additional 100 shares were acquired elsewhere by her, so that at the end of 1933, 5,626 shares were held in her name, all of which were endorsed in blank and placed in the family safe deposit box. On September 9, 1930, C. A. Seifert transferred to his son-in-law Harry M. Ford, 500 shares of this stock as a birthday gift. Ford endorsed these in blank, and placed them in the safe deposit box to which the entire family except himself had access. After 1933 C. A. Seifert held *307 none of this stock in his own name. No explanation or reason is given for the issuance of the 60 shares to Beatrice M. Ford in 1929, or for the transfers to her name of the 5,000 shares in 1930 and 500 shares in 1933. Neither is any reason nor explanation given for the issuance of 3,000 shares in the name of Maude B. Seifert in 1929. On October 18, 1928, a dividend check for $1,000 issued in the name of Maude B. Seifert was deposited by C. A. Seifert in his personal checking account in the City National Bank. On October 19, 1928 he deposited in the same account $4,830 representing a dividend on the stock in his name. On October 17, 1928, dividends in the total amount of $583 were deposited in the account of Beatrice M. Ford. In 1930 dividends paid to C. A. Seifert for $1,375 and in the name of Maude B. Seifert for $1,250 were deposited by C. A. Seifert in his personal checking account. All the remaining dividends for this year were cashed by the persons in whose names the stock stood. In 1931 dividends were paid to and received by the members of the family in whose names the stock stood. In 1932 the first dividends paid in March were all received and cashed by C. A. Seifert *308 except one. Of the September dividends one for $2,000, to Maude B. Seifert was applied to the payment of a note owed by C. A. Seifert to the Danbury National Bank. A dividend check to Maude B. Seifert for $2,000 was deposited on January 4, 1933 by C. A. Seifert to his own bank account. On January 4, 1933, a check for $200 to Maude B. Seifert and one for $2,500 to Beatrice S. Ford were applied to the payment of a note owed by C. A. Seifert to the Danbury National Bank. The first 1933 dividend of $2,606.50 was paid to and received by the persons in whose name the stock stood but the July dividend and the September dividends totaling $2,985.63 were deposited in the "C. A. Seifert, Attorney" account. In 1934 all dividends except three of the September dividends, totaling $1,537.80 were deposited in the "C. A. Seifert, Attorney" account. The total of all dividends paid in this year was $9,473.40. In 1935 up to the time of the death of C. A. Seifert all of the dividends were deposited to the credit of "C. A. Seifert, Attorney". In his credit statement filed with the bank in December 1931 he asserted ownership of 3,400 shares of this stock. At the time of his death C. A. Seifert *309 was the owner of 8,560 shares of Texon Oil and Land Co. stock. Group No. One Oil Corp. Twelve shares of this stock, valued at $31,200 were included in the gross estate by the respondent. Three of these shares were acquired by purchase by C. A. Seifert in 1925, two more in January 1928 and one in November 1928. Six more were purchased in 1930. On November 10, 1930, C. A. Seifert transferred to Maude B. Seifert two shares, and on November 22, one additional share. These transfers in November, 1930, were not effective for tax purposes. In 1933, three other shares of this stock were transferred by C. A. Seifert to Maude B. Seifert. As to this latter transfer Maude B. Seifert testified that it was probably a gift and that if it was not a gift the stock was bought by her. This transfer was not either a valid gift or a valid sale. On September 9, 1930, C. A. Seifert transferred to his daughter, Beatrice S. Ford, 3 shares of this stock. This transfer was not a valid gift, for tax purposes. On September 9, 1930, the decedent transferred to his son-in-law, Harry M. Ford, 3 shares of the stock. This transfer was not effective for tax purposes. Dividends for 1931 were received by *310 members of the family in whose name the stock stood, except one check for $600 which was deposited in C. A. Seifert's account on July 6. In March 1932, all dividend checks were cashed by C. A. Seifert totaling $1,200. All of the June 1932 checks were cashed by C. A. Seifert except one for $300 to Beatrice M. Ford, and one for $200 to Maude B. Seifert, both of which were applied against a note owned by C. A. Seifert to the Danbury National Bank on July 5, 1932. All the September 1932 dividend checks were cashed by C. A. Seifert. The December 1932 dividend to Beatrice M. Ford was cashed by C. A. Seifert, and the dividends to Harry M. Ford, and to C. A. Seifert in the amount of $900 each were applied on a note owed by C. A. Seifert at the Danbury National Bank. A check for $600 for dividends to Maude B. Seifert was deposited by C. A. Seifert to his own credit at City National Bank on January 4, 1933. The first 1933 dividend in March was apparently received in each case by the person in whose name the stock was held, i.e., Maude B. Seifert, Beatrice M. Ford, and Harry M. Ford. A July 18, dividend, payable to Maude B. Seifert, was deposited in the account of "C. A. Seifert, *311 Attorney." Two checks in the name of Beatrice M. Ford were cashed by C. A. Seifert. The September dividends to all the record owners of the stock were deposited to the credit of "C. A. Seifert, Attorney." The January 1934 dividends were deposited in the account of "C. A. Seifert, Attorney." Two March 1934 dividends to Maude B. Seifert, totaling $600 were deposited to the credit of "C. A. Seifert, Attorney." Two checks for $300 each payable, respectively, to Harry M. Ford and Beatrice M. Ford, were cashed by C. A. Seifert. All the June dividends were deposited in the "C. A. Seifert, Attorney," account. Of the September dividends the only one traceable was one for $400 in the name of Maude Seifert, which was deposited in the "C. A. Seifert, Attorney" account. All the December dividends were also deposited in that account. Both the March and June dividends of 1935 were deposited to the account of "C. A. Seifert, Attorney." C. A. Seifert died in September, 1935. In 1929 C. A. Seifert listed on his credit statement to the bank as his property 6 shares of this stock which was all he owned at that time and in 1931 he claimed to own 12 shares. All of this stock belonged to *312 C. A. Seifert at the time of his death. Standard Oil of Indiana Petitioner concedes the correctness of including 900 shares of this stock in the gross estate, and 300 other shares so included are claimed by Maude B. Seifert. These 300 shares were owned by C. A. Seifert, but were held in the name of a broker, together with other securities to which we will later refer, as collateral for his account until November 1, 1933, when they, together with the indebtedness which they secured, were transferred to the account of Maude B. Seifert with the same broker. The transaction by which this was accomplished (referred to by Mrs. Seifert as the "big loan") will be described here, and referred to hereafter where ownership of the other stocks involved is under discussion. On November 1, 1933, C. A. Seifert was indebted to Libaire & Co. for $19,061.05, in connection with his brokerage account. The brokers were carrying in that account the following stocks: 2 shares
Cities Service Co.
100 shares
Child's Inc.
200 shares
Commonwealth & Southern
1200 shares
Standard Oil - Indiana
35 shares
Bank of Manhattan
100 shares
United Corporation
100 shares
Electric Power & Light Co.
50 shares
Underwood-Elliott-Fisher
75 shares
Kennecott Copper Co.
*313 On that date Libaire & Co. wrote C. A. Seifert a letter, enclosing a statement of his account, and informed him that they were forwarding the stocks attached to a sight draft to the City National Bank at Danbury in the amount of his account plus charges. On November 3, 1933, C. A. Seifert drew a sight draft on Libaire & Co. for $20,000, to which was attached certain of the stocks recently received from Libaire & Co., as follows: 50 shares
Underwood-Elliott-Fisher
100 shares
Electric Power & Light Co.
100 shares
United Corporation
75 shares
Kennecott Copper Co.
1200 shares
Standard Oil of Indiana
Libaire & Co. honored the draft, charged it to the account of Maude B. Seifert, and deposited the stocks last above listed in her account. Maude Seifert testified that her husband told her he didn't want the stocks in the Libaire & Co. account any more, and she could have them if she wanted them; that she then borrowed the money from the bank to pay the brokers, and then borrowed money from the brokers a day or so later to pay the bank, putting up some of the same stock as collateral with the brokers. In July of 1934 these 300 shares of Standard Oil of Indiana *314 were delivered to Maude B. Seifert and transferred of record into her name. The remainder were held in C. A. Seifert's name until after his death. Of the dividends declared in 1934 after the transfer into Maude B. Seifert's account, seven checks totaling $975 were deposited by C. A. Seifert in his personal account and one $75for was cashed by Maude B. Seifert. Two checks for $75 and $150 were deposited by C. A. Seifert in his account in January 1935 and one for $75 was cashed by Maude B. Seifert. Only 900 shares of this stock were properly includable in the estate of C. A. Seifert for tax purposes. Underwood-Elliott-Fisher - 150 shares On May 1, 1929 Beatrice S. Ford purchased 50 shares of this stock. On December 24, 1930 she sold the same through Libaire & Co. sustaining a loss of $3,473.25. On the same day C. A. Seifert purchased this stock which he pledged with Libaire as security for his account. His account was then credited with the amount of the purchase price. This stock was among the securities in his account on November 1, 1933, when the entire account was transferred to the account of Maude B. Seifert as described above. On July 11, 1934, this certificate was delivered *315 to Maude B. Seifert and transferred of record into her name. She endorsed it in blank and placed it in the family safe deposit box. On August 11, 1930, C. A. Seifert purchased 100 shares of this company's stock for $8,870. He sold the same on December 15, 1930, for $6,028.50. On December 18, 1930, Maude B. Seifert purchased 100 shares of this company's stock for $15,175, and this stock was held in her account with Libaire & Co., until 1932, when it was delivered to her. She surrendered it for cancellation and a new certificate was issued in her name in 1933. She endorsed it in blank and placed it in the family safe deposit box. C. A. Seifert owned none of this stock at the time of his death. Kennecott Copper - 163 shares - $3,871.25 One hundred twenty-five shares of Nevada Consolidated Copper Co. was purchased by C. A. Seifert on October 25, 1928, and in November 1931 an additional 150 shares were purchased by him. In October 1928 Maude B. Seifert bought fifty shares in the same company. In June 1932 the stock was exchanged on a 1 for 2 basis for shares of stock in Kennecott Copper. As a result of the exchange, C. A. Seifert became the owner of certificates for 62, 1 and 75 *316 shares of this stock. The certificates for 63 shares remained in C. A. Seifert's name at the time of his death, and their inclusion in his gross estate is not now contested by petitioner. The certificate for 75 shares of Kennecott Copper received by C. A. Seifert in return for 150 shares of Nevada Consolidated and issued in the name of Libaire & Co. was transferred into Maude B. Seifert's name in July of 1934 as a result of the brokerage account transaction in 1933 heretofore described. The 50 shares of Nevada Consolidated bought in the name of Maude B. Seifert were converted into 25 shares of Kennecott Copper, and these too were included in the gross estate by respondent. The 75 shares of this stock were not claimed by C. A. Seifert in his credit statement of 1931, but the 63 shares which petitioner concedes are properly includable in his gross estate, and 50 shares of Nevada Consolidated Copper, which apparently were the shares bought in the name of Maude B. Seifert, were so claimed. C. A. Seifert owned only 63 shares of this stock at the time of his death. Standard Oil Co. of New Jersey - 100 shares - $4,500 One hundred shares were bought by C. A. Seifert through Libaire *317 & Co. on August 11, 1930, at a cost of $6,805. On December 13, 1930 his account was credited with $5,006.50 purporting to be receipts from a sale of this stock. Five days later, Maude B. Seifert's account with Libaire & Co. was charged as for a purchase of 100 shares at a cost of $4,652.50. On April 7, 1932 this stock was delivered out of this account to Maude B. Seifert, and on February 23, 1933 a certificate for 100 shares was issued in her name, which was endorsed in blank and placed by her in the joint safe deposit box. This stock was not owned by C. A. Seifert when he died. Chemical National Bank & Trust Co. - 85 shares - $4,037.50 C. A. Seifert purchased 85 shares in September 1929. A certificate for 75 shares was issued in Maude B. Seifert's name and 10 shares in C. A. Seifert's. The latter is concededly properly included in the gross estate. The entire 85 shares were carried in C. A. Seifert's brokerage account with Libaire & Co. from November 14, 1929, shortly after their issuance, until January 27, 1930. They were then endorsed in blank and placed in the joint safe deposit box. The dividends on the 75 shares in issue here were received by Maude B. Seifert in 1930 and *318 1931. In 1932 both January dividend checks were cashed by Maude B. Seifert, the April checks were cashed by the payees, the July checks were both deposited by C. A. Seifert in his account, the October checks were cashed by the payees. In 1933, all dividends were deposited by C. A. Seifert in his account. In his credit statement C. A. Seifert asserted ownership of only the ten shares of this stock which is not in dispute. The 75 shares of the stock were not owned by C. A. Seifert at the time of his death. Noma Electric Co. - 1300 shares The date of original acquisition of this stock is not shown. In his statement of his financial condition prepared for the bank in 1931 C. A. Seifert listed among his assets "1,300 shares Noma Electric Co.", and in his statement dated July 20, 1933 he listed 1,000 shares. On December 18, 1930 he sold through Adamson & O'Brien, brokers, to an account in the name of Maude B. Seifert, 1,000 shares. It was delivered into this account. It had cost C. A. Seifert $23,625 and the selling price was $5,260 reflecting a loss of $18,635. Beatrice Ford claims ownership of these 1,000 shares of this stock, as acquired from her mother. A certificate for *319 300 shares in the name of Maude Seifert is dated July 20, 1931, and is endorsed in bank as of May 25, 1933. This is the only stock which Maude Seifert now claims to own. This stock was "sold" by C. A. Seifert to M. B. Seifert in December 1929 for $4,150.with this $4,150 and other funds, C. A. Seifert purchased a draft in the amount of $4,237.50 which he had credited to the account of Maude B. Seifert. After this transaction C. A. Seifert claimed to own this stock by listing it among his assets in a credit statement. This "sale" was not made in good faith and was not valid. C. A. Seifert owned 300 shares of this stock at the time of his death. United Gas Corporation - 700 shares Petitioner concedes 550 shares to be properly included in the gross estate. Beatrice S. Ford claims to own 150 shares. The certificates for this stock were issued in her name February 5, 1932, were endorsed by her in blank and placed in the joint safe deposit box. She purchased 150 shares on December 31, 1930. On the same day Maude B. Seifert sold 150 shares. Maude B. Seifert had acquired this stock by purchase. In his financial statement of 1931 and 1933, C. A. Seifert claimed to own this stock. *320 The 150 shares were not owned by C. A. Seifert at the time of his death. Chase National Bank - 36 shares C. A. Seifert purchased 32 shares of this stock on August 15, 1929, through Easland & Co., brokers. A stock dividend of 4 shares was later received, so that his holdings were 36 shares. On October 15, 1929 these 36 shares were transferred into the name of Maude B. Seifert. This certificate was received by Libaire & Co. for the account of C. A. Seifert, where it was held until January 27, 1930. Dividends paid in 1929 were deposited by C. A. Seifert in his bank account. In 1930, 1931, 1932 and 1935 Maude B. Seifert received all of the dividends on this stock. C. A. Seifert made no claim to this stock in his financial statements. This stock was not owned by C. A. Seifert at the time of his death. Cities Service Co. - 180 shares Petitioner concedes the correctness of including 72 shares of this stock in the gross estate. Of the remaining 108 shares, Maude B. Seifert claims 54 shares and Harry M. Ford claims 54 shares, for which certificates were issued in their respective names. There is no evidence on this issue beyond the stipulation as to the dates of the issuance *321 of the certificates and the number of shares which they evidence. All of this stock was owned by C. A. Seifert at the time of his death. Irving Trust - 50 shares - $787.50 This stock was purchased by C. A. Seifert on September 19, 1929, through his account with Hincks Bros. at Bridgeport, Conn. The stock was issued in the name of Maude B. Seifert on September 30, 1929, was endorsed in blank on October 21, 1929, and was received into the account of C. A. Seifert with Libaire & Co., where it remained in a long position until January 27, 1930. Of the dividends paid on this stock, as above set out, the following were cashed or deposited by C. A. Seifert - January 2, 1930; April 1, 1930; July 1, 1930; July 1, 1931; July 1, 1932; January 3, 1933; October 2, 1933; January 2, 1934; April 2, 1934; July 2, 1934; October 1, 1934; April 1, 1935; July 1, 1935. The following were cashed by Maude B. Seifert; April 1, 1931, April 1, 1933; the disposition of eight others was impossible of determination. This stock was owned by C. A. Seifert at the time of his death. Middle States Petroleum - 1600 shares The only information contained in the record concerning this item is the stipulation *322 that the corporate records show that on October 22, 1930, 1600 shares were issued in the name of Maude B. Seifert, and that on February 26, 1937, (after the death of decedent) certificates representing 1,000 shares were sold and transferred out of her name, leaving 600 shares recorded in her name. This stock was owned by C. A. Seifert at the time of his death. Pitney-Bowes Postage Meter Co. - 423 shares - $2,643.75 It is stipulated that the corporate records show that C. A. Seifert held 214 shares from October 1, 1932, and that Maude B. Seifert held on March 26, 1934, 209 shares. On February 25, 1935, the 214 shares in the name of C. A. Seifert were transferred to Maude B. Seifert, who endorsed the certificates in blank and placed them in the family safe deposit box. There is no oral evidence as to the circumstances which surrounded the transfer of this stock. C. A. Seifert owned 214 shares of this stock at the time of his death. Socony-Vacuum - 100 shares - $1,112.50 On November 4, 1929, C. A. Seifert purchased 100 shares of Standard Oil Co. of New York at a cost of $4,015. He sold them for $2,324, on December 13, 1930. On December 18, 1930, Maude B. Seifert purchased *323 100 shares of the same stock and her account with the same brokerage firm was charged with $2,125 as its cost. Her certificate for this stock was thereafter exchanged for a like amount of stock of the Socony-Vacuum Co. This certificate was endorsed in blank by her, and placed in the family deposit box. This stock did not belong to C. A. Seifert at the time of his death. Electric Power & Light Corporation - 100 shares - $587.50 This stock was originally bought by Beatrice Ford through Hincks Bros., Bridgeport, on September 23, 1929, at a cost of $8,320. It was sold by her to C. A. Seifert on December 24, 1930. It remained long in C. A. Seifert's account with Libaire & Co. until November 1, 1933, when, with other stocks, it was transferred to the account of Mrs. Seifert with Libaire & Co. in a transaction described as a "big loan", and discussed in detail elsewhere. It remained in Mrs. Seifert's account until July 1934 when it was delivered out of the account. She endorsed it in blank and placed it in the safe deposit box where it was at the time of C. A. Seifert's death. This stock was not the property of C. A. Seifert on the date of his death. Income Tax Issues Respondent *324 determined deficiencies in income tax liability of the estate of C. A. Seifert for the years 1925, 1926, 1927, 1928, 1929, 1932 and 1935 in the aggregate amount of $25,854.41, and in joint income tax liability of the estate of C. A. Seifert and Maude B. Seifert, as his surviving spouse, for the years 1924, 1930, 1931, 1933 and 1934, in the amount of $19,592.31, plus a 50 percent penalty for fraud. C. A. Seifert, during his lifetime, filed his individual income tax returns for the years 1925 to 1929, inclusive, and for 1932, with the collector of internal revenue for the district of Connecticut, at Hartford, Conn. His return for the period January 1, to September 6, 1935, the date of his death, was filed by Maude B. Seifert, executrix. C. A. Seifert and Maude B. Seifert filed their joint returns for the years 1924, 1930, 1931, 1933 and 1934 with the collector of internal revenue for the district of Connecticut at Hartford. Fraud Petitioner pleads the bar of the statute of limitations, which respondent seeks to avoid by alleging fraud with intent to evade tax. C. A. Seifert and Maude Seifert filed a joint income tax return for 1924, reporting a net income of $12,240.38. Respondent *325 determined a deficiency of $587.71, and assessed a 50 percent penalty for fraud, amounting to $293.86. The deficiency was based on an alleged failure to include in the taxable income reported the profit received from the sale by C. A. Seifert in 1924 of 26,000 shares of Texon Oil and Land Co. stock for the sum of $25,317.10. The Commissioner determined a profit of $7,247.10, by deducting, as cost, the average market price of this stock during the period of acquisition by Mr. Seifert, since there was no record of the exact date of purchase or cost. No allowance was made for any expense of the sales. The return filed for 1924 is not in evidence. Since the cost of the stock is not known, it is impossible to say absolutely that a profit was realized and we are unwilling to find that there was fraud in failing to report such a profit. No fraud having been established for 1924, we are barred by the statute of limitations from a consideration of that year. It is stipulated that petitioner concedes that during the year 1925, C. A. Seifert received dividends in the amount of $7,854.90, and reported for taxation $5,050, an omission of $2,804.90. It is stipulated that petitioner concedes *326 that C. A. Seifert received, during 1926, dividends in the amount of $49,315.28, and reported for taxation $23,999.10, an omission of $25,316.18. It is stipulated that petitioner concedes that C. A. Seifert received, during 1927, $32,050, in dividends, and reported for taxation $24,000, an omission of $8,050. It is stipulated that petitioner concedes that during 1928, C. A. Seifert realized a net profit from the sale of securities in the amount of $36,654.35, and that he reported and claimed a deduction for net loss in the amount of $3,901, and did not report any profit. The difference amounts to $40,555.35. It is stipulated that petitioner concedes that during the same year 1928, C. A. Seifert received $8,308.20 as dividends, and reported for taxation $8,393.84. Petitioners thus concede no omission of dividends for this year. It is stipulated that petitioner concedes that during 1929, C. A. Seifert received as net profits on the sale of securities $34,632.53, and reported and claimed a deduction for loss of $19,435.50. The difference amounted to $54,068.03. The loss claimed was, however, disallowed by the Commissioner. During the same year, 1929, it is stipulated that petitioner *327 concedes that C. A. Seifert received in dividends $9,862.53 and reported for taxation $7,434.00, an omission of $2,428.53. During 1930, C. A. Seifert and Maude B. Seifert filed a joint return, in which they reported a joint net loss of $32,840.61, from the sale of securities. It is stipulated that they now contend to have sustained a net loss of $31,147.36. They thus concede an overstatement of losses of $1,693.25. The losses were sustained as the result of intra-family sales of stock, which respondent contends were not bona fide, but which petitioner claims were made for the benefit of each individual involved. It is also stipulated that petitioner concedes that C. A. Seifert and Maude B. Seifert received dividends during 1930 aggregating $42,345.55 and reported for taxation $35,804.31, an omission of $6,541.24. During 1931, for which a joint return was filed by C.A. and Maude B. Seifert, it is stipulated that petitioner concedes that dividends were received in an amount aggregating $28,866.03, and the receipt of $20,786.06 was reported for taxation, an omission of $8,079.97. For the year 1932, it is stipulated that petitioner concedes that C. A. Seifert received $4,837.75 *328 in dividends, and reported $4,375, an omission of $462.75. For the year 1933, for which a joint return was filed, it is stipulated that petitioner concedes that C. A. and Maude B. Seifert received dividends aggregating $10,404.95, and reported for taxation $4,571.96, an omission of $5,832.99. For the year 1934, for which a joint return was filed, it is stipulated that petitioner concedes that dividends totaling $8,701.27 were received, by C. A. and Maude B. Seifert, who reported the receipt of $9,777.89. No omissions are admitted. For the portion of 1935 preceding C. A. Seifert's death, it is stipulated that petitioner concedes that he received $880.93 in dividends, and the return filed by Maude B. Seifert, executrix, reports the receipt of no dividends, an omission of $880.93. Thus, of a total of more than $274,000 admittedly received by C. A. Seifert, individually, (or by C. A. and Maude B. Seifert in those years when joint returns were filed) only $88,000 of taxable income was reported, substantial omissions having admittedly been made in ten of the eleven years involved. That the same practice prevailed throughout the family is indicated by the fact that it is stipulated *329 that in 1929 Maude B. Seifert received $1,871.25 in dividends and $15,934.60 in profits, while she reported in that year no dividends, and a loss of $8,779.60 instead of profits. In 1928 she concededly received $5,781.60 in dividends, and reported none. In 1931 Harry M. Ford received, admittedly, $4,635 in dividends, and reported $2,300. In 1933, he concedes he received $2,325 in dividends, but reported none. In 1931 Beatrice Ford concedes she received $14,111.75, and reported $6,800, and in 1930 she reported $3,954 of admitted receipts of $7,479.80. No individual books or records were kept by either C. A. Seifert or Maude B. Seifert. In those years when he employed a tax adviser to prepare his returns, C. A. Seifert furnished him with data, on various slips of paper, showing losses, and failed to furnish any information regarding profits, or any complete record of dividends received or stock transactions. Each of the deficiencies for the years 1925, 1926, 1927, 1928, 1929, 1930, 1931, 1932, 1933 and 1935 is due, in part, to fraud with intent to evade the tax. The return for each of the years 1925, 1926, 1927, 1928, 1929, 1930, 1931, 1932, 1933 and 1935 is fraudulent with intent *330 to evade tax. 1925 C. A. Seifert filed a separate return for 1925, reporting a net income of $11,973.70. Respondent determined a deficiency in the amount of $2,497.99, as a result of including in the taxable income the following additional items: Salary
$ 2,880.00
Partnership income
10,725.59
Profits, sales of stocks
2,680.61
Dividends
9,948.20
Petitioner admits that C. A. Seifert received as salary from Seifert and Goos the sum of $2,080, rather than $2,880 as respondent alleges, but offered no evidence on the item. We must therefore approve respondent's determination. The additional partnership income is that which was reported by Mrs. Seifert. We have found that the transfer of the partnership was ineffective for tax purposes, and the income is taxable to Mr. Seifert. No evidence was offered from which we can determine there was error in the respondent's determination as to the profits from the sales of securities. Petitioners now concede that Seifert received $7,854.90 in taxable dividends in 1925. Since the respondent conceded at the hearing that his determination was erroneous to the extent of $2,700 with respect to the Group No. One dividends, *331 resulting in an adjusted determination in the amount of $7,248.20, there appears now to be no further dispute as to this item. 1926 Seifert, by separate return for 1926, reported for taxation a net income of $20,180. The Commissioner made the following additions to the reported income. Partnership Income
$10,031.50
Dividends received
$49,294.47
Dividends reported
23,999.10
25,295.37
Adjustment of taxes
90.00
Adjustment of rents
(add'l. deduc.)
40.00
Respondent, by his amendment to answer, filed March 22, 1943, in Docket No. 105766, alleged that the reported income of C. August Seifert did not include a gain of $8,370.09 realized upon the sale of real estate. Petitioners concede the correctness of this allegation. The partnership income consists of the amounts reported by Mrs. Seifert, properly taxable to Mr. Seifert, and the last two small items listed are not contested by petitioner. Since petitioner now concedes the receipt by Seifert of $49,315.28 in taxable dividends in 1926, which amount exceeds the total contended for by respondent, there is no remaining area of dispute as to the taxes due in 1926. 1927 Seifert filed a separate *332 return for 1927, disclosing a net income of $28,248.22. To this the Commissioner made the following adjustments. Partnership Income
$17,436.61
Dividends received
$34,404.75
Dividends reported
24,000.00
10,404.75
S. & G. Realty Co.
18,000.00
Rental Property
11,160.93
Loss on securities
[3,425.80]
For 1927, the Commissioner added $17,436.61 as increased income from the partnership. Of this amount, $8,710.64 represents income erroneously reported by Mrs. Seifert, and $6,922.69 represents increase in net worth taken from records kept in the partnership office. The remainder of $1,803.28 represents half of certain deductions claimed by the partnership and disallowed by respondent, as follows: Bad debts disallowed - deducted twice
$ 773.96
Horses (capital item)
575.00
Adding Machine and Typewriter (capi-
tal item)
233.75
New Garage (capital item)
1,264.84
Automobile (capital item)
759.00 or a total of $3,606.55. These items appear to have been properly disallowed, and in the absence of evidence to the contrary the respondent's action is approved. The partnership income in the amount of $17,436.61 is properly taxable to *333 Mr. Seifert, its owner. Petitioner concedes that Seifert received the sum of $32,050 in dividends, which is $2,354.75 less than the amount attributed by respondent to him. Of this amount, $2,332 was received by Beatrice Ford on stock of Texon Oil & Land Company given to her by C. A. Seifert as a wedding gift or otherwise acquired, and is not properly includable in Seifert's taxable income. The final difference of $22.75 consists of a dividend which respondent determined was received by Seifert on New York, New Haven and Hartford Railroad Co. stock. Petitioners do not concede the receipt of this amount, but offer no evidence in contradiction of the determination which must therefore be sustained. Petitioners admit in their reply the allegations of the respondent with respect to the additional income received from S. & G. Realty Co., and as rental from property in the respective amounts of $18,000 and $11,160.93. 1928 In his separate return for 1928 Seifert reported net income of $10,452.69. The Commissioner made the following adjustments: Partnership income
$16,811.40
Dividends received
$ 9,622.00
Dividends reported
8,393.84
1,229.11
Interest on mortgage
1,680.00
Interest on accounts
117.16
C. A. Seifert Realty Co.
15,000.00
Property rentals
2,922.18
Error on return
540.00
Contributions
[368.32]
Profit on Securities
42,636.95
Loss on Securities dis-
allowed
3,700.00
*334 The adjustment to partnership income for 1928 results from the addition to Mr. Seifert's income of $9,166.21 reported by Mrs. Seifert, the adjustment of partnership income in the amount of $776.47 by reason of the disallowance of salaries, rents and miscellaneous expenses, and adjustment to net worth of $9,148.72. The income reported by Maude B. Seifert has been discussed heretofore, and our conclusion is in support of the respondent's action. There is no evidence concerning the items of partnership deductions disallowed. The $776.47 item is approved in the absence of any challenging evidence. The books of the partnership reflected an increase in net worth in the amount of $16,575.22. The total withdrawals by the partners was $35,880, of which, however, $10,000 appears to have been by way of a loan to Seifert which he immediately repaid, so that the total withdrawals by the partners were, in reality, only $25,880. The total of partnership income to be accounted for therefore, is $42,455.22. C. A. Seifert accounted for $9,166.21 in his return, leaving a balance to be accounted for of $12,061.41. To this should be added $776.47 by reason of the adjustment above referred to. It *335 therefore results that the adjustment to C. A. Seifert's income on account of partnership income should be the sum of $12,837.87 instead of $16,811.40 as determined by the respondent. The disputed dividends are the following: Deter.
Conceded
Differ-
by Com.
by Pet.
ence
Texon Oil &
Land Co.
$6,413.00
$4,830.00
$1,583.00
Group No. 1
300.00
500.00
[200.00]
N.Y.N.H. &
H.R.R.
122.75
191.00
[68.25]
Of the Texon Oil & Land Co. dividends, only $4,830 was received by Seifert on stock in his name. A check for $1,000 was issued as dividends on the stock of Maude B. Seifert, which is not taxable to C. A. Seifert, although it was deposited by him in his account. A check for $33 and one for $550 were received and deposited by Beatrice M. Ford, and are not properly includable in the income of C. A. Seifert. At the hearing petitioner conceded that the adjustment made by respondent by the addition of $300 should be corrected by the substitution of an addition for $500 as dividends on Group No. 1 stock. The petitioner concedes that Seifert received $191 in dividends on New York, New Haven and Hartford Railroad stock, while the respondent determined *336 the receipt of only $122.75. The item of $1,680, interest on mortgage, is a recurring item. As we have already set out in connection with the estate tax issue, Mr. Seifert sold some real estate to a Samuel Pitsetsky in 1926 and caused the purchase money mortgage to be issued to Mrs. Seifert. She testified it was intended as a gift to her. Interest was paid to Mr. Seifert until the latter part of 1930, after which the interest was paid to, and in general, used by Mrs. Seifert. We have found this to have been a valid, bona fide gift. However, the income was paid to and used by decedent until 1931, apparently with the consent of Mrs. Seifert. In the absence of a showing that there was a loan or a gift back to decedent, it must be considered that the interest on this mortgage was taxable income to decedent in 1930 and prior years. In subsequent years when it was received by the owner of the mortgage it was not income of the decedent. The adjustment of $117.16 interest on accounts is admitted by petitioner in its reply. Error in the addition of $15,000 to the reported income of C. A. Seifert, as received from C. A. Seifert Realty Co., was conceded by the respondent at the hearing, *337 and effect to that admission will be given in the computation under Rule 50. The adjustment, in the amount of $2,922.18, for property rentals is admitted by petitioner in its reply. Petitioner does not contest the item of $540, adjusting an error in the return of C. A. Seifert and the item of $368.32 represents additional contributions allowed petitioner. The item of $42,636.95 for profit from the sales of securities consists of the following: 225
Cities Service Preferred
$ 1,089.75
10,000
Texon Oil & Land Co.
12,387.25
678
Cities Service Common
20,696.41
350
Cities Service Common
2,023.45
135
Cities Service Common
5,781.60
Rights
Cities Service
299.88
Rights
Cities Service
358.61
Petitioner, in its reply, admitted the respondent's allegations as to the sale of 225 shares of Cities Service Preferred, 1,028 shares of Cities Service Common, and 10,000 shares of Texon Oil & Land Co. but denies those allegations which relate to the sale of 135 shares of Cities Service Common and Cities Service rights, as well as the amounts of profit alleged to have been realized. Upon stipulation, petitioners conceded the amounts of profit contended for by *338 respondent as set out above, including those from the sale of Cities Service rights, with the exception of the 135 shares of Cities Service Common, which were in the name of Maude B. Seifert, who now claims to have realized the profit, although she admittedly failed to report it for taxation. It is impossible to determine from the record any of the circumstances surrounding the acquisition of the 135 shares in Mrs. Seifert's name, the sale of which gave rise to the item now under consideration. There is no evidence that C. A. Seifert purchased this stock, and no evidence as to the disposition of the proceeds of the sale. In the absence of some evidence from which we could find the ownership of this stock was in someone else, we hold that they belonged to Maude B. Seifert. The loss of $3,700 disallowed in this year is made up of a loss of $3,645 on the sale of Garod Radio Co., which was allowed in 1927, and loss claimed in excess of the amount sustained, to the extent of $55 on Freed Eisenman Radio Co. stock. This adjustment is not contested. 1929 C. A. Seifert separately reported for taxation for 1929 a net income of $10,714.09. The Commissioner added additional items not *339 now in dispute totaling $284.94, and items which are in issue as follows Partnership Income
$18,196.40
Dividends received
$13,065.53
Dividends reported
7,434.00
5,631.53
Interest on mortgage
1,680.00
Salary, C. A. Seifert
Realty Co.
4,560.50
Fees for endorsing notes
2,000.00
Commissions
150.00
Net profit, sale of securi-
ties
78,824.98
Loss claimed, sale of se-
curities (disallowed)
19,435.50
98,260.48
The addition to Seifert's income in 1929 as increased partnership profits amounted to $18,196.40. Of this $6,588.91 represents the profits reported by Mrs. Seifert, and discussed elsewhere, with the conclusion that it was properly added to Seifert's taxable income. The remainder of $11,607.49 is accounted for as follows: The partners withdrew $58,000, and accounted for $41,955.64 for income tax purposes, leaving $16,044.36 of withdrawals unaccounted for, which, taken with the increase in net worth in the amount of $7,170.61 totals $23,214.97, of which Mr. Seifert's share is $11,607.49. This latter amount is the proper figure by which the income of C. A. Seifert should be adjusted on account of this item. The interest on mortgage *340 has been discussed heretofore with the conclusion that it was properly included in Mr. Seifert's income for the taxable year. As to the dividends received, petitioner now concedes that C. A. Seifert received $9,862.53. The Commissioner attributes to him the receipt of dividends totaling $13,065.53. The differences involve these items: Deter.
Conceded
Differ-
by Com.
by Pet'r.
ence
Cities Service
Preferred
$ 662.50
$ 600.00
$ 62.50
Group No. One
Oil
3,000.00
2,400.00
600.00
N.Y.N.H. &
H.R.R. Co.
460.25
403.50
56.75
Nevada Con-
solidated
525.00
375.00
150.00
Chemical Bank
38.25
4.50
33.75
Plymouth Oil
2,100.00
100.00
2,000.00
Standard Oil
of Indiana
4,200.00
3,900.00
300.00
There is no evidence from which we can determine error in the respondent's determination that C. A. Seifert received from Cities Service preferred stock $622.50. Petitioner contends $62.50 was received by Maude B. Seifert, but we can not determine from the record how much, if any, of this stock was in her name at that time, and therefore affirm respondent's determination as to this item. Respondent included in Seifert's income $3,000 dividends from *341 Group No. One Oil Co. Petitioner admits the receipt of $2,400, but offers no evidence as to the other $600. None of this stock was owned by or held in the names of any other member of the family in 1929. We cannot say respondent is in error upon the evidence before us. Respondent included in Seifert's income $460.25, as dividends received on New York, New Haven & Hartford Railroad stock. Petitioner concedes that C. A. Seifert received $403.50, or $56.75 less than respondent determined. Petitioner says Mrs. Seifert received $125 as dividends from stock in the same corporation. There is no evidence in the record from which we can determine that the Commissioner erred in his determination, and we must therefore approve it. The Nevada Consolidated stock was bought in 1928, 125 shares in the name of C. A. Seifert and 50 shares in the name of Maude B. Seifert. The dividends of $375 and $150, respectively, declared on the two blocks of stock, are now attributed by the respondent to C. A. Seifert. We found, in the estate tax issue, that C. A. Seifert was not the owner of the stock in Maude B. Seifert's name, and, according to the same reasoning, we must hold respondent in error in including *342 the dividends declared on Maude B. Seifert's stock in the income of C. A. Seifert for 1929. The Chemical Bank stock is in a similar situation. This stock was bought by C. A. Seifert in September of the tax year. Seventy-five shares were issued in Maude B. Seifert's name, and 10 shares in C. A. Seifert's name. Both certificates were carried in C. A. Seifert's brokerage account as collateral security from November 14, 1929 until January 27, 1930. The dividends, however, were paid around October 1, before the stock was pledged for Mr. Seifert's account, and they must be taxed to the persons in whose names the stock was recorded. The record shows that C. A. Seifert purchased, through Libaire & Co., in 1929, 700 shares of Plymouth Oil stock, and that Maude B. Seifert purchased through Adamson & O'Brien, in 1929, 700 shares. Apparently, 600 of the 700 shares bought by C. A. Seifert were issued in the name of Maude B. Seifert, because the stock ownership record of the corporation shows, as of 1929, 1300 shares to be in the name of Mrs. Seifert and 100 shares in the name of Mr. Seifert. On November 8, 1929, all the shares held in both names were cancelled, and a new certificate was issued, *343 apparently in a street name, because the brokerage record as of December 31, 1929, shows Mrs. Seifert as being "long" 1400 shares of this stock. The stock was bought, vary largely, in April and May, and Mrs. Seifert held 1300 shares in her name from that time until November, when the new certificate was issued. There is no evidence as to why the stock purchased by Mr. Seifert was issued or transferred into the name of Mrs. Seifert and petitioner has conceded that all the stock held at the time of C. A. Seifert's death is properly includable in his estate. The names by which Mrs. Seifert was described in the stock certificates were Mrs. B. M. Seifert, Mrs. C. A. Seifert, Mrs. Maude Seifert and Mrs. Maude B. Seifert. The dividends on 700 shares of this stock were properly taxable to C. A. Seifert in 1929. The record shows that Mr. Seifert was the record owner of 900 shares of Standard Oil Co. of Indiana throughout 1929, and of 1200 from March on. The respondent has determined that he received $4,200 in dividends during 1929, and petitioner admits he received $3,900. We are unable to say from the record that the respondent erred. The item of $4,560.50, which respondent included as *344 salary of C. A. Seifert from the C. A. Seifert Realty Co., is claimed by petitioner to represent salary of Mrs. Seifert. The checks which total that amount were issued by Mr. Seifert for the corporation to Mrs. C. A. Seifert and designated as salary, and charged to a "Salary account" on the books. Mrs. Seifert was a stockholder and an officer, and a salary of $3,000 a year was voted her. Mrs. Seifert testified she received the salary, and spent it in the stock market. Later she testified that Mr. Seifert received the money, but that he used it for her benefit. The checks issued to her in 1929 and charged to salary totaled $4,560, and all were endorsed not by Mrs. Seifert but by C. A. Seifert and cashed or deposited by Mr. Seifert. There is no evidence that she actually performed any services for the company. She testified that "he did the work". The company never paid any dividends, and the salaries were paid if and when Mr. Seifert felt the company was able to pay them. This salary was properly taxable to Mr. Selfert. There is no evidence in the record indicating error on the part of respondent in including in Seifert's income $2,000 as fees for endorsing notes, and in disallowing *345 a claimed deduction of $150 for commissions paid. Seifert reported a loss from sale of securities in the amount of $19,435.50. It is now conceded that he individually realized a profit in the amount of $34,632.53. The respondent contends he realized a profit of $78,824.98, based on his theory that all profits realized by all members of the Seifert family are, in reality, the profit of Mr. Seifert. There is no dispute as to the amount of those profits but solely as to whether they are taxable to Mr. Seifert. Analyzing the differences between the parties relating to these profits (or losses), we find them to be in the amounts set forth below, and that they are claimed by the persons indicated: Difference
Mrs. Seifert
Mrs. Ford
Mr. Ford
Cities Service Pfd.
$ 410.63
$ 410.63
Am. Car & Foundry
588.50
$ 588.50
American Superpower
[1,019.50]
[1,019.50]
Continental Oil
299.86
299.86
Elec. Bond & Share
[1,033.00]
[1,033.00]
Goldman Sachs
[139.50]
[139.50]
Gulf Oil
[694.03]
[694.03]
National Sugar
[321.50]
[321.50]
Roch. & Central Power
357.00
357.00
United Gas
1,607.00
1,607.00
United Gas Warrants
159.00
361.00
[$202.00]
Texon Oil & Land Co.
48,768.75
* 18,270.00
27,998.75
*346 Respondent is under the impression that all the Cities Service stock was bought by Mr. Seifert with funds of Ford Coal Co., withdrawn and later repaid by him, and that when the stock was sold Mr. Seifert retained the proceeds. We do not find evidence in the record to sustain quite so broad a conclusion. The stock bought by Mr. Seifert with Ford Coal Co. funds was bought in the name of Harry Ford, Beatrice Ford and Catherine Davis, a housemaid of Mrs. Seifert's. This stock was sold in 1928 and the gain was taxable to C. A. Seifert in that year. There is no indication that the stock in Mrs. Seifert's name, which was sold in 1929, was bought in the same manner. The gain derived from the sale of this stock in 1929 is not taxable to C. A. Seifert. With the exception of Texon Oil & Land Co. stock, there is nothing in the record concerning the other stock sales made in 1929, which would *347 justify a conclusion that respondent erred in his determination with regard thereto. With regard to Texon Oil & Land Co. stock sold in this year, we have already concluded in a consideration of the estate tax issue that C. A. Seifert owned 10,060 shares of this stock in 1929, 60 shares of which were in the name of Beatrice Ford and 3,000 shares of which were in the name of Maude B. Seifert. Beatrice Ford owned 1,566 shares of this stock and Maude B. Seifert owned at least 3,000 shares. The testimony as to this item is that 1,500 shares in the name of Beatrice Seifert were sold in 1929 at a profit of $27,998.75, and 1,000 shares in the name of Maude B. Seifert were sold at a profit of $20,770. In the absence of other testimony, we conclude that the profit from the sale of the stock in the name of Maude B. Seifert and the profit from the sale of the stock in the name of Beatrice Ford is not taxable to C. A. Seifert. 1930 Mr. and Mrs. Seifert filed a joint return for 1930, reporting a joint net income of $19,252. The Commissioner increased the reported income by the addition of these items: Property rental
$ 1,200.00
Net gain, sale of securities
$ 3,698.44
Loss, sale of securities
32,840.61
36,539.05
Dividends received
101,239.27
Dividends reported
35,804.31
65,434.96
*348 The item labelled "property rental," $1,200, is, more accurately, increased partnership income. It arises from the following situation: the partnership of Seifert and Goos had rented, since 1915, certain land owned by the New York, New Haven and Hartford Railroad Company, for use in connection with their lumber yard. It had paid an annual rental of $2,400. In 1926, Mr. Seifert and Mr. Goos jointly purchased the land and rented it to the partnership at the same rental, which they received individually, until 1928, when Seifert sold (or at least transferred) his one-half interest in the property to the C. A. Seifert Realty Co., a corporation. Thereafter, one-half of the annual rent was paid to C. A. Seifert Realty Company. Taxes on the property were paid by the partnership. The Commissioner determined the deduction by the partnership of rental for property which had been owned jointly by the partners was an improper deduction, disallowed it, thus increasing the partnership income by $2,400 annually, and the income distributable to the partners by $1,200 each. The Commissioner erred in adding this item to the income of C. A. Seifert for the year in question. The contentions of the *349 parties relative to the losses from sales of securities revolve around the validity for tax purposes of the intra-family sales by which these losses were very largely established. There seems to be no dispute that, if these sales are valid for tax purposes, losses in the amount contended for by petitioner were sustained. By disregarding these sales profits in the amount determined by respondent would result. The sales of securities by Mr. and Mrs. Seifert in 1930 were valid for tax purposes, and the losses were therefore sustained in the amounts claimed by petitioner. In their return for 1930, the Seiferts reported the receipt of $35,804.31 in dividends. The petitioner now concedes they received $42,345.55. The respondent contends they received $101,239.27. The differences between the dividends attributed to the taxpayers by the respondent, and those admittedly received by them are set forth as follows: Determined by
Conceded by Pet.
Commissioner
Mr. & Mrs. Seifert
Diff.
Commonwealth & Southern
$ 122.85
$ 122.85
Electric Power & Light
100.00
$ 25.00
75.00
Kennecott Copper
300.00
284.38
15.62
Manhattan Co., Bank of
105.00
105.00
N. Y., N.H. & H.R.R. Co. Pfd.
22.75
91.00
68.25
N. Y. Title & Mortgage
70.00
70.00
Standard Oil of Indiana
3,125.00
3,000.00
125.00
Texon Oil & Land
63,273.50
27,025.00
36,248.50
Group No. One Oil
24,600.00
2,400.00
22,200.00
*350 The Commonwealth & Southern dividend is claimed to have been received by Beatrice Ford. However, the only Commonwealth and Southern stock concerning which we have any evidence is now conceded by petitioner to have belonged to C. A. Seifert at the time of his death. If this stock produced the dividends, they are properly taxable to C. A. Seifert. If not, the respondent's determination must be sustained for lack of contradictory proof. The Electric Power & Light Co. stock was bought with other stocks in the name of Mrs. Ford with proceeds of the sale of 1,500 shares of Texon stock, also in her name. On December 24, 1930, her brokerage account with Libaire & Co. reflects the sale of the Electric Power & Light stock, and C. A. Seifert's account reflects their purchase. Upon the record we conclude that respondent erred with regard to this item, except as canceled. Respondent says the taxpayers are taxable on dividends from Kennecott Copper Co., in the amount of $300. Petitioner concedes they received $284.38, and make no claim as to the difference of $15.62. For lack of proof of error, we sustain the respondent's contention. The Manhattan Company dividend is claimed during this *351 year by Harry M. Ford. There is evidence showing the ownership of 35 shares of Bank of Manhattan stock to be in Harry M. Ford during this year. The Commissioner erred with respect to this item. Petitioner concedes the receipt of dividends from New York, New Haven & Hartford Railroad Co. in the amount of $91, which is in excess of the amount determined by the Commissioner to have been so received. Respondent determined C. A. and Maude Seifert received $70 dividends on New York Title & Mortgage Co. stock. Petitioner concedes that amount was received by Beatrice Ford. There is evidence in the record showing this stock to be held in the brokerage account of Beatrice Ford and the 1930 dividends thereon credited to her account. The respondent erred as to this item. The Standard Oil of Indiana dividend admittedly received by C. A. and Maude Seifert in the amount of $3,000 is $125 less than the amount determined by respondent. Petitioner claims $125 to have been received by Beatrice Ford. There is evidence in the record which indicates that Mrs. Ford acquired some Standard of Indiana stock in 1929, and there is nothing to indicate she sold it before or during this tax year. Respondent *352 erred in his determination as to this item. The largest item of dividends with which we are concerned is that of the Texon Oil and Land Co., in the amount determined by the Commissioner of $63,273.50. The petitioner concedes the receipt of $5,925 by C. A. Seifert and $21,100 by Mrs. Seifert, a total of $27,025, but contends $16,341 was received by Beatrice Ford and $1,625 by Harry Ford. The respondent's contention is based on the receipt of dividends on stock in Mr. Seifert's name of $6,175, in Mrs. Seifert's name of $29,475, in Mrs. Ford's name of $24,423.50 and in Mr. Ford's name of $3,200. It is suggested by respondent that the variance may be explained by the taxpayers attributing to the wrong tax year dividends received at or near the year's end, and that explanation is probably true, since there seems to be no substantial difficulty as to the amount of dividends paid, in the aggregate. Respondent offered oral evidence to the effect that dividends on 5,500 shares of stock standing in the name of C. A. Seifert were paid to him during 1930. We have held from other specific evidence that from the 5,500 shares standing in the name of C. A. Seifert during 1930 he transferred 5,000 *353 shares into the name of Beatrice Ford on September 9, 1930 and 500 shares to Harry M. Ford as a birthday gift on the same date. The transfer to Harry M. Ford was a valid gift. The transfer to Beatrice Ford was not a valid gift and the real ownership of the 5,000 shares continued to be in C. A. Seifert, who also was the owner of 60 other shares of this stock standing in the name of Beatrice M. Ford. Therefore, during 1930 C. A. Seifert was taxable on the dividends declared and paid on 5,560 shares of this stock until September 9, and on 5,060 shares thereafter. The computation of the amount of these dividends may be made by counsel under Rule 50. To this amount should be added the amount of the dividends received by Maude B. Seifert. The result is the correct amount to be used in adjusting the income reported by the joint return of Mr. and Mrs. Seifert for the year 1930. This being a joint return, the dividends from the 3,000 shares placed in the name of Maude B. Seifert in 1929, and which continued to be owned by C. A. Seifert, were included in the joint income of C. A. Seifert and Maude B. Seifert. The last item in dispute is Group No. One Oil Co. dividends. The Commissioner added *354 $24,600 to the reported income of the Seiferts'. Petitioner contends Mr. Seifert received only $2,400, Mrs. Seifert none, and Mr. and Mrs. Ford each $7,200. These total only $16,800. By the end of 1930, Mr. Seifert had purchased a total of 12 shares of this stock. We have heretofore held all his transfers of this stock invalid for tax purposes, and the dividends thereon, which the evidence indicates totaled $24,600 in 1930, are taxable to C. A. Seifert. 1931 A joint return was filed for this year by C. A. and Maude Seifert reporting a net income of $5,044.96. This was increased by the addition of the following items: Partnership income
$10,849.18
Proceeds, sale of steam
shovel
2,500.00
Disallowed loss on note
3,000.00
Dividends received
$28,085.03
Dividends reported
20,786.06
7,298.97
After 1929, no net worth statements were found among the partnership records. A reconstructed net worth statement as of September 6, 1935, the date of Mr. Seifert's death, showed a reduction in net worth from the last statement found in the partnership offices, as of December 31, 1929, amounting to $29,399.10. A portion of this total decrease in net worth was *355 allocated by respondent to each of the years involved in a proportion which recognized that the greater decrease in net worth occurred in those years in which larger withdrawals were made by the partners. The method of allocation used seems to be fairer to petitioner than to simply divide the total decrease by 5 years and 8 months. However, the respondent has erred in including as a partnership asset real estate valued at $15,000 owned by C. A. Seifert Realty Co. and Edward Goos. Therefore, the total decrease in net worth would be $44,399.10 instead of $29,399.10, and all of the annual decreases in net worth for 1931, 1932, 1933 and 1935 will be recomputed accordingly. The adjustments for 1931 should be as follows: the total withdrawals by the partners were $39,900. The partners reported $4,646.57, leaving a balance of withdrawals unreported of $35,253.43, of which Seifert's share is $17,627.72. From this should be subtracted one-half the decrease in net worth allocable to 1931. The respondent's allegations relating to the sale of the steam shovel and the loss on note, of $2,500 and $3,000, respectively, are admitted in their reply by petitioners. The differences between the *356 dividends alleged to have been received and those admitted, are as follows: Determined by
Conceded by Pet.
Commissioner
Mr. & Mrs. Seifert
Diff.
Chase National Bank
$ 126.00
$ 144.00
$ 18.00
Commonwealth & Southern
71.75
71.75
Kennecott Copper
260.00
155.00
105.00
Manhattan Co.
140.00
140.00
N. Y., N.H. & H.R.R. Co., Common
825.00
725.00
100.00
N. Y., N.H. & H.R.R. Co., Pfd.
22.75
91.00
68.25
Texon Oil & Land Co.
12,126.00
13,625.00
1,499.00
Group No. One
7,200.00
6,900.00
300.00
Federal Mining & Smelting
87.50
87.50
The petitioner admits the receipt of dividends from Chase National Bank in an amount exceeding the determination of the respondent. The Commonwealth & Southern stock, so far as we are able to determine from the record, belonged to C. A. Seifert, and the dividend is properly taxable to him. There is no evidence from which we can say the respondent erred with respect to the Kennecott Copper dividend. There is some evidence in the form of exhibits, records of brokerage transactions, from which it appears that Beatrice Ford and Harry Ford owned some Bank of Manhattan stock in the tax year. Beatrice *357 claims $105 of the $140 attributed to Mr. and Mrs. Seifert by respondent, and Harry claims the other $35. This item appears to have been erroneously taxed to the Seiferts. The Commissioner included $825 in dividends from New York, New Haven and Hartford Railroad common stock, while petitioners concede the receipt of only $725, but the respondent detemined the receipt of only $22.75 dividends on preferred stocks, while petitioner admits the receipt of $91. There is no contention that the stock was not the property of C. A. Seifert. The difference probably arises from an erroneous allocation of receipts to the two classes of stock, or to the tax years. On the record we can not say respondent erred in his determination. The Texon Oil & Land dividends are conceded by petitioner in an amount exceeding the respondent's determination. Respondent suggests this is due to an "overlapping" of years. Petitioner admits the receipt of $300 less from Group No. One than the respondent determined, and this is thought to be due to an overlapping of years. The respondent's determination is approved. The respondent added $87.50 for dividends of Federal Mining and Smelting Co., which petitioners *358 do not concede having been received by any member of the Seifert family. The stock, however, was bought by C. A. Seifert in 1926, and endorsed by him in blank in 1927, but there was no transfer on the corporate records until after the death of Mr. Seifert, when it went into Mrs. Seifert's name. It is admittedly properly taxable in the estate. The respondent's action as to this item is correct. 1932 Mr. Seifert filed a separate return for 1932, reporting a net income of $354.73. This was increased by the respondent to include the following: Partnership income
$11,563.52
Dividends received
$27,650.25
Dividends reported
4,375.00
23,275.25
Interest on mortgage
1,365.00
Salary, C. A. Seifert Realty
Co.
500.00
Disallowed deduction
6,000.00
Loss, worthless securities
[4,648.93]
The partnership income was increased by $11,563.52. The partners withdrew a total of $37,800, which, decreased by the portions of net worth decrease attributed to this year of $12,322.80, leaves a balance of $25,477.20. The partners accounted for $2,350.16 in their individual returns, leaving a balance of $23,127.04, of which Mr. Seifert's share is determined by *359 respondent to be $11,563.52. This item will be redetermined in conformity with our holding in regard to a similar item for 1931. The interest on the mortgage has been discussed, and we have found it was Mrs. Seifert's income in the taxable year, and it is improperly taxed to C. A. Seifert. The item of $500 included as salary was a check of the C. A. Seifert Realty Company charged to salary of Mrs. Seifert, paid to Lemme Hat Co. This is properly taxable to C. A. Seifert. We have heretofore considered the "salaries" account of this company in our holding on the income items for the year 1929. The adjustment of $6,000 for deductions disallowed consists of two items, of $4,000 claimed by reason of loss sustained by paying a note of Joseph Connell on which Mr. Seifert was an endorser, and $2,000 on note of G. M. Heinzelman. No evidence was offered, as to these items, from which we can say the respondent erred. The loss allowed is by reason of stock in General Theatres Equipment Inc. becoming worthless, and is in the amount of $4,648.93. A deduction was claimed in the amount of $9,630, but only $4,648.93 is allowed as only the common stock was found to be worthless. In the absence *360 of evidence to the contrary, the action is approved. The dividend situation is the last dispute to be resolved. The Commissioner contended that dividends amounting to $27,650.25 were received, and only $4,375 were reported. The stipulation concedes the receipt of $4,837.75. The differences are to be found in this schedule: Deter. by Com.
Conceded by Pet'r.
Difference
Texon Oil & Land
$15,639.00
$ 850.00
$14,789.00
Group No. 1
9,000.00
1,650.00
7,350.00
Chase National Bank
99.00
99.00
Chemical Bank
153.00
18.00
135.00
Noma Electric
130.00
130.00
Standard Oil of N.J.
100.00
100.00
Standard Oil of N. Y.
75.00
75.00
Underwood Elliott Fisher
150.00
50.00
100.00
Irving Trust
80.00
80.00
N. Y. N.H. & H.R.R. Co.
45.50
45.50
The Texon dividends which respondent included in C. A. Seifert's income includes all the dividends found to have been paid by Texon in stock in the names of all the members of the Seifert family. The dividends were virtually all cashed or deposited by Mr. Seifert, or paid on his notes or indebtedness. In 1932 C. A. Seifert was the owner of 8,560 shares of this stock, 500 shares having been acquired *361 by him in 1931 and standing in his name; 5,060 shares being in the name of Beatrice M. Ford, and 3,000 shares being in the name of Maude B. Seifert. The dividends paid on 8,560 shares of this stock in 1932 are taxable to C. A. Seifert. The exact amount will be recomputed under Rule 50. Dividends on Group No. 1 stock aggregating $9,000 were included by respondent in Seifert's taxable income. Petitioner concedes receipt by C. A. Seifert of $1,650.00, and the receipt by each of the other three members of the family of $1,650.00. These total only $6,600 of admitted receipts. There is no evidence from which we can say respondent's determination is in error as to amount, and we therefore approve it. The record indicates the use by or for Mr. Seifert of most of the dividends. We have held that he owned 12 shares of this stock in 1932, and the dividends thereon are properly taxable to him. The Commissioner included $99 as dividends from Chase National Bank stock. This stock was bought by Seifert in 1929, transferred into Mrs. Seifert's name in the same year, and received into Mr. Seifert's brokerage account shortly thereafter, where it remained for about ten weeks. In 1932, the stock was *362 in Mrs. Seifert's name, Mr. Seifert never claimed to own it after its transfer, and the dividends were received by and are taxable to her. Chemical Bank and Trust dividends in the amount of $153 were taxed to Mr. Seifert by respondent, but petitioner concedes the receipt by him of only $18. Mrs. Seifert claims to have received $135. In 1932, 75 shares were in the name of Mrs. Seifert and 10 in the name of Mr. Seifert, of the 85 originally bought by Mr. Seifert in 1929. The dividends should be taxed to them in that proportion. Respondent added $130 to Noma Electric Co. dividends to Mr. Seifert's income. Petitioner does not admit the receipt by Mr. Seifert of any, but Mrs. Seifert concedes the receipt by her of $650. In 1932 C. A. Seifert owned 300 shares of this stock and the dividends on these shares, to be computed under Rule 50, are to be included in his income. The Standard Oil of New Jersey dividend is erroneously included here in the income of C. A. Seifert. The stock was bought by Mr. Seifert. but was transferred by sale to Mrs. Seifert in 1930. The Standard Oil of New York dividend in the amount of $75 is claimed by Mrs. Seifert as a "Socony-Vacuum" dividend. The record *363 shows that 100 shares of Standard Oil of New York were sold by C. A. Seifert on December 13, 1930, and Mrs. Seifert bought the same number of shares 5 days later. This dividend was erroneously included in the taxable income of C. A. Seifert. The Underwood-Elliott-Fisher dividend attributed to Mr. Seifert by the respondent is admitted to the extent of $50 and denied to the extent of $100. Fifty shares of this stock were acquired by Mr. Seifert from Mrs. Ford in 1930, and were retained by him until November 1, 1933. One hundred shares were bought by Seifert in August of 1930 and sold December 15, 1930, at a loss. Mrs. Seifert's account at the same brokers reflects purchase by her of 100 shares three days after the sale mentioned above. The dividends on the 100 shares are not taxable to C. A. Seifert. C. A. Seifert purchased 50 shares of Irving Trust Co. stock through his account with Hincks Brothers in September of 1929. It was issued in the name of Maude B. Seifert, who endorsed it in lbank. It was received into C. A. Seifert's account with Libaire and Co. on November 14, 1929, where it remained in a long position until January 27, 1930. Some of the dividends in each year thereafter *364 were cashed or deposited by C. A. Seifert. The dividends are taxable to C. A. Seifert. 1933 C. A. and Maude Seifert filed a joint return for 1933, reporting a net loss. The Commissioner adjusted the return by including in their income the following items: Partnership Income
$7,365.09
Loss disallowed
2,000.00
Dividends received
$11,285.50
Dividends reported
4,571.96
6,713.54
The Commissioner added $7,365 to Seifert's income from the partnership. The total withdrawals for the year totalled $20,000, of which $4,037.55 was reported for taxation by the partners, leaving a balance of $15,962.45. The net worth decrease allotted to 1933 by respondent was $1,232.25, leaving a balance of $14,730.20, of which Seifert's share is $7,365.09. This item will be recomputed in conformity with our holding in regard to a similar item for 1931. No evidence was offered to show error in the disallowance of the loss of $2,000, and it must therefore be sustained. It represents a claimed loss on a note of G. M. Heinzelman. The dividend items now appear to be as follows: Mr. and Mrs. Seifert reported dividends of $4,571.96. It is now stipulated that they received, respectively, *365 $2,534.25 and $7,870.70, or a total of $10,404.95. The Commissioner determined they received $11,285.50, and the difference of $880.55 is accounted for by two items: Mr.
Commis-
and Mrs.
Differ-
sioner
Seifert
ence
Texon Oil & Land
$5,749.30
$4,870.00
$879.30
Margay Oil Co.
11.25
10.00
1.25
The difference of $1.25 is probably due to a disagreement over the proper tax year. Under the evidence we affirm respondent's determination as to this item. The last of the Texon stock in Mr. Seifert's name was transferred to his daughter's name in February of 1933. However he continued to be the real owner of 8,560 shares, 5,560 shares of which were in the name of Beatrice M. Ford. The dividends paid in 1933 on these 8,500 shares should be included in the income jointly reported by C. A. Seifert and Maude B. Seifert for this year. 1934 No fraud having been established for 1934, we are barred by the statute of limitations from a consideration of that year. 1935 Mrs. Seifert, as executrix, filed a separate return for Mr. Seifert for the period of 1935 up to the date of his death, September 6, 1935, reporting a net loss of $1,165. The Commissioner *366 made the following adjustments: Partnership Income
$4,504.36
Dividends received
6,883.37
Interest on mortgage
675.00
Interest deduction disallowed
1,542.43
The respondent increased the 1935 income from the partnership by $4,504.36. This was the share of the partnership profits reported by Mrs. Seifert, adjusted by respondent on account of decrease in partnership net worth and determined by respondent to be attributable to that part of the year before Mr. Seifert's death. This item will be recomputed in conformity with our holding on a similar item for 1931. The item called interest on mortgage has been discussed elsewhere and we have found it to have been improperly taxed to Mr. Seifert in the taxable year. No evidence was introduced from which we can determine that the respondent erred in disallowing the interest in the amount of $1,542.43. The return filed on Mr. Seifert's behalf did not report any dividend income. Petitioner stipulates a concession that he received $880.93. The difference between respondent's determination and the admitted receipts rests in the following items. Deter.
Conceded
by Comm'r
by Pet'r
Diff.
Texon Oil
$3,157.80
$3,157.80
Group No. 1
2,400.00
2,400.00
Kennecott Copper
48.90
28.35
20.55
Chase National
Bank
50.40
50.40
Chemical Bank
114.75
13.50
101.25
Standard Oil of
N.J.
97.19
97.19
Standard Oil of
N. Y.
15.00
15.00
Standard Oil of
Ind.
600.00
675.00
[75.00]
Underwood-Elliott-
Fisher
150.00
150.00
Irving Trust
32.50
32.50
Pitney Bowes
63.45
10.70
52.75
*367 All of these items have been discussed, and their ownership determined, heretofore in these findings. Without undue repetition, we find, on the basis of those facts previously set forth that the dividends on the following stock were not properly taxable to C. A. Seifert: Chase National Bank, Standard Oil of New York, Standard Oil of New Jersey, Underwood-Elliot-Fisher, as well as 100 shares of Kennecott Copper, 75 shares Chemical Bank, and 300 shares Standard Oil of Indiana. The dividends attributable to 63 shares Kennecott Copper, 10 shares Chemical Bank, and 900 shares Standard Oil Co., 50 shares of Irving Trust Co., 214 shares of Pitney-Bowes Postage Meter Co., 8,560 shares of Texon Oil & Land Co., and 12 shares of Group No. 1, are properly taxable to him. Since the issues involved in these cases are questions of fact or ultimate fact, they are resolved by our findings set out above, and any lengthy discussion of the mass of evidence upon which they are based is unnecessary. We wish to point out, however, the tremendous difficulties which were encountered in making our various findings, in spite of the helpful work of the legal and accounting representatives of the parties *368 hereto. The record is painfully long with a multitude of exhibits, and the task of bringing into some judicial order the chaos of facts and accounting data which it contains has been exacting. Much of the evidence was vague and at times inconsistent. In view of the fact that some ten years are here involved, the first one of which was 19 years ago, and the fact that the evidence sought to cover all of the many financial transactions of an entire family during that period in an attempt to reconstruct their items of income and expense, together with their many and active brokerage accounts, it is apparent that only a superhuman power could accomplish the purpose of these proceedings with complete exactness and certainty. The most important questions of ultimate fact are the fraud issue and the issues having to do with the ownership of property and income. In the proceedings involving income tax liability, we have found fraud in all returns except those for the years 1924 and 1934. This finding is based primarily upon the consistent practice of the decedent in understating his income for tax purposes by large amounts. It is inconceivable that he did this so often and by such amounts *369 without the intent to defraud the Treasury of taxes payable by him. It can not be said that he was ignorant or unaware of tax consequences since a large number of security sales made by him were for the purpose of minimizing taxes, and it is quite probable that many of the transfers of securities to other members of his family were motivated in part by the same purpose. Therefore, while we have based our finding in this regard primarily upon the undisputed fact of the decedent's consistent understatement of income by large amounts over a long period of years, it should be stressed that this ultimate finding is based not on the fact alone but upon the entire record. The issues with regard to the ownership of various items of property and the taxability of various items of income have been many and difficult. In considering them we have kept in mind that many years have elapsed since the transactions in question took place, and that the principal actor in the transactions has been dead since 1935. Since the donative intent of the decedent is the principal question upon which these issues turn, the task of counsel was, accordingly, more difficult. In only one instance was there any *370 instrument of conveyance executed by the decedent purporting to evidence his contemporaneous intent in making the alleged transfer. In all other instances we must turn to later acts of the parties, declaration of ownership by the decedent, or testimony by interested witnesses as to conversations of the decedent and conclusions they drew therefrom. In most instances we have concluded that the subsequent acts of the parties to the various transactions and the declarations of decedent evidenced by various credit statements are wholly inconsistent with granting validity, for tax purposes, to the various transfers here involved. With regard to the alleged gift by decedent of his interest in the business and assets of the partnership of Seifert & Goods, we have concluded that the decedent did not make a valid gift, even though an assignment was executed and recorded by decedent. The character of the subject matter of these alleged gifts, the ambiguity in the transfers themselves, and the overwhelming weight of the circumstantial evidence against the validity of the purported transfers, have convinced us that the assignments in question were not made by decedent in good faith and did *371 not effect any transfer of ownership. The partnership income was, of course, properly taxed to C. A. Seifert. With respect to the respondent's computation of this income for certain of the years in question there is some criticism of its adjustment to allow for increase and decrease of partnership net worth. This computation was made necessary by the absence of proper partnership records. There is no evidence that it is erroneous or prejudicial to petitioner, except for the inclusion as a partnership asset of one item of property belonging to the C. A. Seifert Realty Co., and to Mr. Goos, which error we have corrected. For the most part, the intra-family sales of securities were, in our opinion, valid. Losses resulting from intra-family sales, per se, were not then under statutory interdiction, as they now are. There is testimony that the sales were made for the mutual advantage of the participants. Virtually all of these sales were brokerage transactions. Each member of the family maintained separate brokerage accounts, generally with more than one firm. It appears from the evidence that the accounts were bona fide, and that each was subject to control by the person in whose *372 name it was carried. On sound ocassions, Mr. Seifert placed orders to be executed for Mrs. Seifert's account, but she indicated by her testimony that he acted for her in so doing. The sales here questioned were carried out by transfers from one brokerage account to another, with the appropriate charges and credits entered in the respective accounts. The motive was generally to establish losses for income tax purposes. After the transfer of certain stock, the dividends on that stock were always thereafter credited to the account of the record owner, as far as can be ascertained from the record. On only one or two occasions were there circumstances which have caused us to conclude against the good faith and validity of the transactions; e.g., when, a few days after the alleged sales, there was credited back to the account of the purchaser from the account of the seller an amount remarkably like the price which had so recently been paid for the stock. There is, also among the transactions which may be classified as sales, that by which a group of stocks is claimed by Mrs. Seifert as the result of what she describes simply as a "big loan." The facts are set forth above. Mr. Seifert's *373 brokers forwarded a sight draft in the amount which he owed them, to which they attached the stocks held in his account. Two days later, Mr. Seifert drew a sight draft on the same brokerage firm, in a slightly increased amount, to which was attached a selected number of the stocks originally in his account. This draft was honored by the brokers, who charged it against Mrs. Seifert's account and credited her account with the stocks. Mrs. Seifert testified that Mr. Seifert told her he was no longer interested in the stocks in that account, and that if she wanted them she could have them by paying up his account. She then arranged for the "big loan," and took over the stocks. The details are far from clear, but enough has been shown, we think, to indicate that the transaction was in the nature of a sale. Mr. Seifert's indebtedness to the brokers was satisfied, ultimately, by Mrs. Seifert through her account with the same brokers. The stocks then passed into her possession. While the method of accomplishing the transfer was quite extraordinary, there is nothing to show lack of substance in the final result. Decision will be entered under Rule 50. Footnotes
*. This is the amount conceded by petitioner to have been the gain realized in this year by Maude B. Seifert from the sale of this stock. A witness of respondent testified without contradiction that the amount of gain resulting from the sale of this stock in Maude B. Seifert's name was $20,770.00.↩